# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 9, 2009

## STATE OF TENNESSEE v. HOLLENA ARLENE WEST

**Direct Appeal from the Criminal Court for Putnam County**
**No. 07-0913     Leon Burns, Judge**

_____

**No. M2008-02200-CCA-R3-CD  - Filed July 13, 2010**

_____

Following a jury trial, Defendant, Hollena Arlene West, was found guilty of driving under the influence ("DUI").  The trial court sentenced Defendant to eleven months, twenty-nine days, with the sentence suspended and Defendant placed on probation after serving ten days in confinement.  On appeal, Defendant argues that the evidence was insufficient to support her conviction and the trial court erred in allowing expert testimony concerning the effect of taking multiple prescription medications.  After a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which DAVID H. WELLES and J.C. MCLIN, JJ., joined.

David Neal Brady, District Public Defender; and Allison M. Rasbury, Assistant Public Defender, for the appellant, Hollena Arlene West.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William Edward Gibson, District Attorney General; and Marty Savage, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

## I. Background

Officer Robert Cantwell, with the Cookeville City Police Department, testified that he observed Defendant's vehicle traveling east on Jackson Street on February 9, 2007.

Officer Cantwell followed Defendant as she turned north on to North Willow. He observed Defendant's vehicle swerve into the middle turn lane on three separate occasions before the vehicle returned to the left lane. Officer Cantwell activated his emergency equipment, and Defendant pulled into a parking lot. Officer Cantwell said that he approached Defendant's vehicle, but Defendant started to pull away. He called out twice for Defendant to stop her vehicle, and after the second command, Defendant pulled her vehicle into a parking spot.

Officer Cantwell said that he explained to Defendant that he had stopped her vehicle because she was driving erratically. Defendant responded, "Yes, my sinuses, I'm having problems with my sinuses." Defendant acknowledged that her sinus condition made her "drive bad." Officer Cantwell asked Defendant for her license and registration information. Officer Cantwell said that Defendant fumbled unsuccessfully through the items in her vehicle for two or three minutes, and then orally provided information concerning her identification. Officer Cantwell relayed that information to the dispatcher to verify the status of Defendant's driver's license. He returned to Defendant's vehicle and asked her to step out of the vehicle. Defendant told Officer Cantwell that she had not consumed any alcohol before driving, and the only medicine she had taken was Benadryl earlier that day.

Officer Cantwell asked Defendant to perform three field sobriety tests. The first test required Defendant to repeat the alphabet starting with the letter "C" and ending with the letter "X". Defendant started properly but repeated the rest of the alphabet without stopping at "X" as directed. Defendant then performed the "finger dexterity task" only twice instead of three times as requested. Defendant failed to satisfactorily perform the "nine-step walk and turn test" because she used her arms for balance instead of holding them down by her side, she did not touch her heels to her toes, and she took only eight steps, instead of nine, before turning. After administering the tests, Officer Cantwell placed Defendant under arrest for DUI.

Defendant signed the Implied Consent Form, and Officer Cantwell transported her to the hospital for a blood alcohol test. Officer Cantwell observed the administration of the test, and sealed the blood sample in a blood alcohol content kit. He transported Defendant to the Putnam County Jail and then transported the kit to the police department where it was logged into evidence. Defendant's blood sample was later sent to the Tennessee Bureau of Investigation ("TBI") for analysis.

Officer Cantwell said that the traffic stop was videotaped from a camera in his patrol car. The videotape was introduced as an exhibit at trial and played for the jury. On cross-examination, Officer Cantwell stated that the camera was not activated at the time he observed Defendant's erratic driving. Officer Cantwell acknowledged that Defendant told him she had a back problem which affected her balance.

Dawn Swiney, a forensic toxicologist at the T.B.I.'s crime laboratory in Nashville, testified that an analysis of Defendant's blood sample revealed the presence of meprobamate, carisoprodol, and dihydrocodeinone. Agent Swiney explained that carisoprodol is distributed under the generic name Soma and is a central nervous system depressant and a muscle relaxant. When carisoprodol is taken, it is broken down into meprobamate which continues to have the same effects on the central nervous system. Dihydrocodeinone, which is more commonly known as hydrocodone, is distributed under the generic name Lortab and acts as a central nervous system depressant and a pain killer. Agent Swiney stated that her analysis did not reveal the presence of Benadryl, or diphenhydramine, in Defendant's blood. Agent Swiney said that the levels of meprobamate and dihydrocodeinone in Defendant's blood were at what she called "high therapeutic levels," which is the range of dosage normally prescribed by a physician.

Agent Swiney stated that Soma and Lortab cause similar effects on a person as does alcohol. That is, the drugs cause drowsiness, dizziness, disorientation, and can slow down a person's thought processes and cause confusion. Agent Swiney said that the drugs would probably also affect a person's ability to follow instructions.

On cross-examination, Agent Swiney was first questioned about how the drugs interacted with each other. In fact, the questioning was during a presentation of multiple subject questions to the witness. Defense counsel asked, "and, you don't really have any way to determine how they [meprobamate and hydrocodone] interact with each other? Is that right? Because you're not a doctor, and you're not a pharmacist. Right?" To this the witness responded, "I can tell you what I've read in reference materials." On redirect examination, Agent Swiney stated that Soma and Lortab taken together would have a synergistic effect, that is, they would enhance the effect of each other. Agent Swiney said that it was not uncommon for these drugs to affect a person's driving ability even when taken within therapeutic limits.

The State rested its case-in-chief, and Defendant put on her defense. Kenneth West, Defendant's husband, testified that Defendant had taken Soma and Lortab for seven or eight years. Mr. West stated that after taking the medication for a few weeks, Defendant did not experience any side effects from the drugs. Mr. West said that when Defendant was upset or nervous she would begin stuttering and had "racing thoughts." On cross-examination, Mr. West stated that Defendant took her medication on an "as needed" basis. That is, if she were experiencing more pain on a particular day, she might increase her dosage. Mr. West acknowledged that he did not know how much medication Defendant had taken on the day of the incident.

Defendant testified that she took Lortab and Soma because of injuries she had sustained in an automobile accident which included a head injury and a herniated disc in her neck and lower back. Defendant said that she also suffered from sciatica and fibromyalgia and had a "gait disorder" which affected her balance. Defendant said that she did not drive when she first began taking Soma and Lortab approximately eight years prior to the trial, but the side effects lessened over the years. Defendant said that she "use[d] caution" when driving as instructed on the prescription bottle.

Defendant said she had difficulty finding her driver's license for Officer Cantwell because she had been to the bank to cash a check before the traffic stop, and she had not returned her driver's license to its usual place in her wallet. Defendant said that she did not know why Officer Cantrell stopped her vehicle. Defendant stated that she pulled into the middle turn lane on one occasion, but it was the wrong street and she returned her vehicle to the left lane.

On cross-examination, Defendant said that she did not notice the patrol car behind her until after she had pulled into the parking lot. Defendant explained that she was going to the Department of Human Services to inquire about her TennCare benefits. Defendant said that she normally took one dose of the Lortab and Soma in the morning, and then took an additional dose later in the day if she needed it. Defendant said that she could not remember whether she took the drugs on the morning of the incident, and then she stated that there was a "fifty-fifty" chance she had taken her medication as usual. Defendant said that she told Officer Cantwell that she had taken Benadryl because that was the only medicine "out of the ordinary that could possibly cause [her] to be pulled over."

Defendant explained that she used a cane when she walked but Officer Cantwell ordered her out of her vehicle before she could grab her cane. Defendant stated that a portion of her conversation with Officer Cantwell in which she explained all of her physical ailments was "magically missing" from the videotape. Defendant said that her medication helped her drive better because she could reach the pedals without discomfort. Defendant reiterated that she did not cross over into the middle turn lane without using her turn signal. Defendant explained, "I was going somewhere, and it was on the left-hand side of the road."

## II. Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to support a finding that she was under the influence of an intoxicant at the time she was pulled over. Defendant contends that she performed two out of the three field sobriety tests correctly, albeit "not up to the officer's unreasonable standards." Defendant also submits that the amount of Soma and Lortab in her system was within the therapeutic range prescribed by physicians.

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced on appeal with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.*; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Tennessee Code Annotated section 55-10-401(a) provides, in pertinent part:

It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:

(1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system.

"The fact that any person or persons who drive while under the influence of narcotic drugs, or shall drive while under the influence of barbital drugs, is or has been entitled to use such drugs under the laws of this state, shall not constitute a defense to the violation of §§ 55-10-401-55-10-404." T.C.A. § 55-10-402.

"This Court has previously found sufficient evidence to sustain DUI convictions based on a defendant's behavior, prescription medications found in the defendant's systems, and expert testimony." *State v. Donna Beatrice Kiser*, No. E2005-02489-CCA-R3-CD, 2006 WL 2076341 (Tenn. Crim. App., at Knoxville, July 27, 2006), *no perm. to appeal filed* (citing *State v. Albert L. Norton*, No. 03C01-9707-CR-00270, 1999 WL 508654 *1-5 (Tenn. Crim. App., at Knoxville, July 20, 1999), *no. perm. to appeal filed* (finding sufficient evidence to

sustain the defendant's DUI conviction due to the presence of three types of pain medication, an inability to perform field sobriety tests, and expert testimony regarding the possible effects of the medication); *State v. Kenneth Lee Abbott*, No.02C01-9311-CC-00263, 1995 WL 422810 *1-5 (Tenn. Crim. App., at Jackson, July 19, 1995), *perm. to appeal denied* (Tenn. Dec. 28, 1995) (finding sufficient evidence for a DUI conviction after the Defendant's blood test revealed the presence of two tranquilizer drugs, one being within the therapeutic range and one being well above therapeutic levels).

Viewing the evidence a light most favorable to the State, Officer Cantrell testified that he observed Defendant driving erratically by swerving her vehicle into the middle turn lane on three separate occasions. Officer Cantrell said that Defendant had difficulty finding her identification, and failed to perform two of the three field sobriety tests correctly and failed to follow directions as to the other test. Agent Swiney testified that Defendant's blood test revealed the presence of dihydrocodeinone, or Lortab, which is specifically designated as a narcotic drug and a schedule III controlled substance, as well as carisoprodol (Soma) and meprobamate, a metabolite of Soma with the same effects on the nervous system. T.C.A. § 39-17-410(e). Agent Swiney stated that Soma and Lortab have the same effects on a person as alcohol, and when taken together, each drug would enhance the effects of the other drug. Agent Swiney said that the levels of meprobamate and dihydrocodeinone in Defendant's blood were at high therapeutic levels. After a thorough review, we conclude that this evidence is sufficient for a rational trier of fact to find the essential elements of driving under the influence beyond a reasonable doubt.

## III. Expert Testimony

Defendant argues that the trial court erred in allowing Agent Swiney to testify about the synergistic effect of Soma and Lortab. Defendant submits that Agent Swiney acknowledged during cross-examination that she was neither a doctor nor a pharmacist, and the only basis for her knowledge in this area of toxicology was "unspecified" reference materials. Defendant contends, therefore, that such testimony was outside Agent Swiney's area of expertise.

Questions regarding the admissibility, qualifications, relevancy and competency of expert testimony are left to the discretion of the trial court. *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263-264 (Tenn. 1997). Pursuant to Rule 702 of the Tennessee Rules of Evidence, an expert may testify "in the form of an opinion or otherwise," when the "scientific, technical, or other specialized knowledge" offered by the witness will substantially assist the trier of fact. Rule 703 of the Tennessee Rules of Evidence requires the expert's opinion to be supported by trustworthy facts or data "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject."

The determining factor is "whether the witness's qualifications authorize him or her to give an informed opinion on the subject at issue." *State v. Stevens*, 78 S.W.3d 817, 834 (Tenn. 2002). A trial court's ruling on the admissibility of such evidence may be overturned on appeal only if the discretion is exercised arbitrarily or abused. *Id*. at 832.

At the commencement of her direct examination, Agent Swiney testified that she had earned a Bachelor of Science degree from Belmont University, and had been employed by the T.B.I. as a forensic scientist for fourteen years. Agent Swiney's job duties included the testing of "blood, urine, and some body tissues for the presence of blood alcohol and poisons." Agent Swiney stated that she had attended various classes and meetings during the course of her employment at the Federal Bureau of Investigation Academy, the Society of Forensic Toxicologists, the Southern Association of Forensic Scientists, and the American Academy of Forensic Scientists. Agent Swiney acknowledged that she had previously testified as a toxicology expert. Defendant did not cross-examine Agent Swiney concerning her qualifications, and Agent Swiney was qualified as an expert in the area of toxicology without objection.

On cross-examination, the following colloquy occurred:

[DEFENSE COUNSEL]: And, you don't really have any way to determine how [the drugs] interact with each other? Is that right? Because you're not a doctor, and you're not a pharmacist. Right?

[AGENT SWINEY]: I can tell you what I've read in reference materials.

[DEFENSE COUNSEL]: But you yourself are not a doctor?

[AGENT SWINEY]: No, I'm not a doctor.

[DEFENSE COUNSEL]: And you're not a pharmacist?

[AGENT SWINEY]: I'm not a pharmacist.

[DEFENSE COUNSEL]: So, all you can relay is what you have read?

[AGENT SWINEY]: That is correct.

The State began Agent Swiney's redirect examination as follows:

| | |
|---|---|
| [THE STATE]: | You're not a doctor, you're not a pharmacist, but you are an expert toxicologist? |
| [AGENT SWINEY]: | That's correct. |
| [THE STATE]: | Okay. Now, based, based on your training and your experience . . . would you find, expect to find what we would call synergistic, or an additive effect? In other words, would the sum of both cause a greater effect that just the two individually? |
| [DEFENSE COUNSEL]: | Your Honor, I'm going to object. She's already testified that she can't present any evidence to the Court other than what she's read as far as how they interact with each other. |
| THE COURT: | Overrule the objection. |
| [AGENT SWINEY]: | Okay. Yes, they do have synergistic effects on each other. And basically what this means is, if you take the two together, that they enhance the effects of each other. |

Defendant raised the issue of the synergistic effects of multiple drugs on cross-examination. Defendant elicited a general response from Agent Swiney concerning her knowledge of the topic without inquiring as to a more specific basis for her expertise. The State was entitled to clarify on redirect examination that, although not a doctor or pharmacist, Agent Swiney, as an expert in toxicology, could testify about the effects of drugs on an individual. *See State v. Chearis*, 995 S.W.2d 641, 645 (Tenn. Crim. App. 1999) (observing that one of the purposes of redirect examination is to clarify the testimony of a witness during cross-examination). Our supreme court has observed that an expert witness "may acquire the necessary expertise through formal education or life experiences." *State v. Reid*, 91 S.W.3d 247, 302 (Tenn. 2002) (citing Neil P. Cohen et al, *Tennessee Law of Evidence* § 7.02[4] at 7-21). Based on our review of the record, including Agent Swiney's testimony on direct examination concerning her qualifications as a toxicology expert, we conclude that the trial court did not abuse its discretion in allowing Agent Swiney to testify about the synergistic effect of multiple drugs on redirect examination. Defendant is not entitled to relief on this issue.

**CONCLUSION**

After a thorough review, we affirm the judgment of the trial court.

_____

THOMAS T. WOODALL, JUDGE